GILBERT W. LEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1408.    Promulgated February 18, 1927.

1. In the circumstances of this proceeding, income resulting from sales of real estate should be computed on the installment basis.

2. Overassessments in the circumstances pleaded herein are not subject to review by the Board.

*H. A. Mihills*, *C. P. A.*, for the petitioner.
*J. D. Foley*, *Esq.*, for the respondent.

The Commissioner asserts the deficiencies here in question for the years 1918 and 1920 in the respective amounts of $9,817.20 and $4,973.91, and overassessments for the years 1917 and 1919 in the respective amounts of $157.31 and $22,280.65. The issues to be determined are (1) whether income resulting from the sale of subdivision real estate is to be determined by the use of the completed transaction or installment sales method, and (2) whether certain losses were sustained in 1917 or at some prior date. A third issue as to whether certain dividends received in 1917 were subject to tax at 1916 or 1917 rates was abandoned at the hearing.

FINDINGS OF FACT.

The petitioner is an individual residing in Detroit. His principal business is the conduct of a wholesale grocery company, but he is also largely interested in banking, automobile manufacturing, and real estate operations. He keeps his books and makes his income-tax returns on the cash receipts and disbursements basis.

In the years 1914 and 1915 the petitioner acquired two acreage tracts of real estate in Detroit known as the Gilbert and Grand River Park subdivisions. He subdivided these tracts into lots, all of which he sold prior to December 31, 1916. All sales were made on contracts that called for an initial cash payment of 10 per cent of the purchase price and 1 per cent monthly thereafter, monthly payments to include accrued interest. In making his income-tax returns during the terms of these sales contracts the petitioner sometimes used the completed transaction and at other times the installment basis. Upon audit of the petitioner's income-tax returns, the Commissioner held that all the income resulting from the sale of lots in the two subdivisions should be reported on the installment basis. The profits on such sales made in 1916 were $10,945.06 and $69,627.79, or a total of $80,572.85, which was income taxable in 1916 if the completed transaction basis of reporting profits is employed. Profits from installments collected during the years 1917 to 1920, both inclusive, were: 1917, $6,205.11; 1918, $3,783.95; 1919, $8,244.17; 1920, $7,887.37.

Prior to March 1, 1913, petitioner purchased 1,082 shares of the common stock and 550 shares of the preferred stock of the Lozier Motor Car Co. at $100 per share. The March 1, 1913, value of the common stock was $27 per share and of the preferred stock, $90 per share. On September 23, 1914, the Detroit Trust Co. was appointed receiver in bankruptcy for the Lozier Motor Car Co. and thereafter made trustee in bankruptcy. As receiver the trust company reported that the books of the car company showed total assets of $4,899,972.65, but found that, on the basis of a going concern, the total value of such assets was $2,069,718.50. The total liabilities appearing on the car company's books were $3,214,414.88. Later the receiver appraised the assets, other than land and buildings, for liquidation purposes at $1,366,584.46. The total common stock of the car company outstanding was $2,000,000. The total preferred stock was $1,494,700.

The assets of the company were advertised for sale and on February 4, 1915, were sold at auction for $1,000,000. The sale was confirmed by the court in bankruptcy. Under the terms of the sale it was left optional with the purchaser as to whether he should take the lands and buildings. If he decided not to take them, he was to be allowed a deduction of $350,000 on the purchase price. On September 28, 1915, he exercised his option by taking the real estate, and a contract was entered into providing that payments of $75,000 should be made on the plant property on February 15, 1916, 1917, 1918, and 1919, and a payment of $50,000 on or before February 15, 1920. The terms of sale of the personalty required that all payments be made within one year from February 15, 1915. The

contract provided that the entire price should immediately become due in the event that the property should pass into the hands of a third party.

On June 9, 1917, the referee in bankruptcy entered an order closing the estate and discharging the trustee. The total amount received and disbursed to the creditors of the company was slightly less than 30 per cent of the proved debts, leaving a little more than 70 per cent unpaid. The stockholders received nothing.

## OPINION.

LANSDON: The Commissioner advised the petitioner of deficiencies for the years 1918 and 1920, and of overassessments for the years 1917 and 1919. There is nothing in the record, either in the way of evidence adduced by the petitioner or admissions by the Commissioner, that indicates the basis for the overassessments or that they were made in circumstances that would justify us in redetermining tax liability for the years in which they were found. We hold, therefore, that our only function here is to redetermine the petitioner's tax liability for the years 1918 and 1920, as to which the Commissioner has asserted deficiencies in the amounts set forth *supra*. *Appeal of W. H. Morefield*, 4 B. T. A. 394; *Appeal of Cornelius Cotton Mills*, 4 B. T. A. 255.

The sale contracts of lots in the two tracts of land subdivided by the petitioner provided for an initial cash payment of 10 per cent of the purchase price and 1 per cent monthly payments, including interest, thereafter, until the entire purchase price debt should be discharged. The petitioner contends that he received no taxable income until his receipts from payments exceeded the cost of the land and that he had the option to report such income either on the installment basis or after complete recoupment of his capital investment. This may be true, but the so-called completed transaction basis is another recognized method for reporting income from transactions of the nature here involved. The effect of the first method would be to distribute the taxable income derived from such sales over all the years that elapsed before the final payment was made on the last lot that was sold. The second method would postpone the return of any part of the receipts from sales as income until all capital expenditures were replaced. If the accrual or completed transaction method is used the entire profit was taxable income in 1916 or prior years.

In his original income-tax returns for several of the years in question the petitioner computed his taxable income from the sale of lots by what he calls the percentage method. The evidence indicates that such computation was in effect the use of the installment

basis. It is apparent, therefore, that the petitioner elected to return the income resulting from the sale of lots on the installment basis. This choice must have been considered and doubtless was made because it was deemed to best serve the interests of the petitioner. Having once made his election, the petitioner should not be allowed to change to a different basis merely because subsequent legislation or other events made it to his interest so to do. We are of the opinion that the petitioner's income from the sale of lots, in the circumstances set forth in our findings of fact, should be computed, reported, and taxed on the installment basis.

The petitioner contends that he sustained a loss on the stock of the Lozier Motor Car Co. in the year 1917, and asks for the deduction of such loss from his gross income for that year. Since no deficiency is asserted for the year 1917, we are of the opinion, as set forth *supra*, that we have no authority to redetermine tax liability of the petitioner for that year, and therefore make no decision either as to the fact or date of the alleged loss.

> *Judgment will be entered for the respondent on 10 days' notice, under Rule 50.*